(26 Misc. Rep. 646.)

MARX et al. v. PENNSYLVANIA FIRE INS. CO. OF PHILADELPHIA et al.

(City Court of New York, General Term.   March 6, 1899.)

INSURANCE—DEPOSITION—DISCOVERY.

Insured, after a fire, submitted, before suit on the policy, to examination, under oath, without counsel, touching the cause of the fire and amount of loss.   The deposition covered 300 pages, and was three months in the taking.   *Held*, in an action on the policy, the defense of fraud being set up, that plaintiff, not having a copy, should be allowed an inspection of the deposition in defendant's possession.

Appeal from special term.

Actions by Henry and Benjamin Marx against the Pennsylvania Fire Insurance Company of Philadelphia and four other defendants. There was an order granting an inspection of depositions, and defendants appeal.   Affirmed.

Argued before FITZSIMONS, C. J., and CONLAN and SCHUCHMAN, JJ.

Cardozo & Nathan, for appellants.

Mitchell L. Erlinger, for respondents.

CONLAN, J.   This is an appeal from an order of the special term granting an inspection of certain depositions of the plaintiffs, taken in pursuance of a clause in a policy of fire insurance, and before action brought thereon.   The same order was made in four other cases brought by the plaintiffs against the different defendants, and the appeals are taken in all five cases thus pending.

The following appears from the record made for the purpose of these appeals:   At a date subsequent to the alleged fire upon the plaintiffs' premises, and as required by the terms of the several policies of insurance issued to them by the five defendant insurance companies, the plaintiffs appeared, and submitted to an examination, under oath, touching the circumstances of the fire, and the amount of loss suffered thereby.   In the alleged proofs of loss furnished to the several defendants the aggregate loss was stated by the plaintiffs to be $13,223.71, while it is the contention of the defendants that this is an overvaluation by several thousand dollars.

These depositions are claimed to cover some 300 typewritten pages. It also appears that the plaintiffs were not represented by counsel at the taking of these depositions, nor were they furnished with a copy of the depositions; and, whether or not they were promised copies of the same (which is a disputed question between them), the fact appears to be that they did not acquire, and have not now, any copy of the same, and that the originals are in the exclusive possession and control of the defendants or their attorneys.

It is insisted by the defendants that the plaintiffs are not entitled to an inspection or copy of the depositions, for various reasons, and particularly because they are their own statements, under oath, derived from their books of account, and all within their personal knowledge, or contained within their books of account; and that, if they are permitted to have and retain copies, an opportunity would be afforded to them to explain away the effect which the depositions would have upon the minds of the court and jury upon the trial. The answers allege fraud, and it would appear that these depositions are relied upon as proofs of the allegation. Counsel for the plaintiffs contend with much force and reason that, if the depositions shall have that effect, then a refusal to compel a discovery might seriously prejudice the plaintiffs' case.

It would not appear reasonable to suppose that the plaintiffs can have any distinct recollection of the contents of these 300 pages of typewriting, no matter from what source adduced. We are all aware of the careful scrutiny which is given to the preparation of cases on appeal, and what comparisons are necessarily made with the stenographer's minutes and the various exhibits introduced upon the trial before the proposed case is permitted to be served, and then with what care amendments are prepared, and so the whole is presented to the trial judge for his examination and settlement. It may be that the layman does not see the legal effect of testimony given as well as the trained lawyer, and for this reason he should not be concluded by a statement made, even under oath, without the presence of counsel who are thereafter to conduct the litigation. The insurer, it may well be said, is not on the lookout for a liberal construction of the terms of the policy, or anything resulting from a fire, covered thereby, to the advantage of the assured. The plaintiffs will be obliged to meet and overcome this charge of fraud upon the trial, and they ought not to be compelled to go to trial handicapped by a statement under oath, drawn out at the instance of the opposite party. This examination is alleged to have occupied a period of time extending from March to June, 1898, and certainly no advantage ought to be permitted to the one party over the other in the possession of this paper. We are not cited to any case on the defendants' brief which, in our opinion, goes to the length of shutting out a party from obtaining that which is declared under oath of counsel to be material and indispensably necessary upon the trial, and without which they cannot safely proceed to trial. There is, moreover, an additional provision of the Code which would seem to authorize the making of the order, for, under section 726, where an original pleading or paper is lost or withheld by any person, the

court may authorize a copy to be filed and used instead of the original. The language of the section is sufficiently broad to cover a case like the present, even were the plaintiffs not entitled, under the provision, for a discovery. But we do not think it necessary to invoke the aid of that section, having reached the conclusion that the order appealed from was right, and ought to be affirmed, in all five actions.

Order affirmed, with costs. All concur.